**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**DANNY HUBBARD**                                                                                            **PLAINTIFF**

**v.**                                                                                       **CIVIL ACTION NO. 3:04CV117LS**

**GEOFFREY STILL, SHELLY BOONE, JOHN**
**HUSEBOSCH, JON COOLEY, WILLIE WATKINS,**
**JOHN FORMAN, ANTONIO L. PITTMAN,**
**HAROLD GRAY, ELMO TOWNSEND, LEIGH**
**WELLS, WILLIAM SIMPSON, KYLE REYNOLDS,**
**GREGORY REYNOLDS, DAVID ELSON, JIM**
**RUBLE, RONNIE ODOM and KEVIN MAY**                                       **DEFENDANTS**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the court on the Defendants' Motion for Summary Judgment, in this case in which a prisoner in federal custody contends that state officials[1] used excessive force during his arrest. The parties agree as to many of the details of the incident that gave rise to this lawsuit, which is based the arrest of the Plaintiff, Danny Hubbard, on March 10, 2002. His arrest was the result of an inspection of a commercial vehicle that Hubbard was driving in Warren County, Mississippi. Hubbard does not deny that drugs were found in the vehicle during the inspection, although he contends that the search for those drugs was illegal and he has no knowledge of how they came to be in his truck.

The inspector, Defendant Ronnie Odom, placed Hubbard under arrest and contacted the Mississippi Bureau of Narcotics for assistance. Odom then instructed Hubbard to drive to the Petro Truck Stop in Jackson, Mississippi, where he was supposed to have delivered the drugs. The other

---

[1]One Defendant, Kevin May, was actually a federal employee with the Drug Enforcement Administration; however, he cannot be served with process due to a military deployment overseas.

officers joined Odom and Hubbard at the truck stop. After waiting there for some period of time, Hubbard's cell phone rang, and he answered it. According to the Defendants, Hubbard then resisted the agents' efforts to listen in on the conversation. According to Hubbard, Defendant Geoffrey Still grabbed him around the neck and held his jaw in an attempt to get Hubbard to repeat certain statements into the receiver. Hubbard contends that Still then punched him in the head and threw him to the concrete, where two other Defendants beat him while he was handcuffed and immobilized on the ground. Hubbard says that he was then dragged to a government truck, where his head was placed against a window and he was severely beaten. According to him, the other Defendants witnessed the beating and did nothing to stop it.

The Defendants originally moved for summary judgment on grounds of qualified immunity, arguing that there was no evidence to show that Hubbard was beaten or injured. Records originally provided by the Defendants indicated that Hubbard was brought to the Warren County Jail without any complaint of injury. The nurse at the Jail, who was not employed there at the time of Hubbard's arrest, has submitted an affidavit to the effect that there are no records in his file that indicate that he received any medical treatment. In reply, however, Hubbard insisted that he was treated at the River Regional Medical Center. In order to give Hubbard every opportunity to establish his claim, the court ordered the Defendants to obtain any records of Hubbard's treatment from that facility. The Defendants have now provided those records, which show that Hubbard was seen at the Emergency Room of the River Region Medical Center on March 11, 2002, the day after his arrest.

Those records also indicate that Hubbard was complaining of mild pain in his lower back and right shoulder and reported having been thrown down, kicked, and punched with fists. The diagnosis was that Hubbard suffered a contusion of his back and shoulder. Although Hubbard argues that the

beating caused substantial damage to his eyes and head areas, no other problems were noted in the emergency room, and no testing was ordered. A copy of a photograph of Hubbard is attached to the medical records, and it does not reveal any injury to his head or face. Hubbard was released within about half an hour after his arrival, with the medications Prevacid and Tylenol.

The Defendants have moved for summary judgment, which is only appropriate where there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). All of the undisputed facts, and any inferences that may be drawn from those facts, "must be viewed in the light most favorable to the non-moving party," who is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorable to him." *Miller v. Leathers*, 913 F.2d 1085, 1086 (4th Cir. 1990), quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). As to the relevant, material facts, "[w]hen the moving party produces credible evidence that establishes there is no genuine issue of material fact, the opposing party must produce specific facts demonstrating a genuine issue for trial." *Woods v. Rhodes*, 994 F.2d 494, 499 (8th Cir. 1993). A mere scintilla of evidence will be insufficient to preclude summary judgment; there must be sufficient evidence on which a factfinder could find for the plaintiff. *Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999).

Here, the parties agree that there was some sort of altercation between Hubbard and the officers who arrived at the truck stop after his arrest. The Defendants characterize the altercation as Hubbard's resisting the officers' attempt to listen in on his cell phone conversation. Hubbard characterizes the altercation as a full-blown, prolonged assault by several officers. Although Hubbard's characterization is not fully supported by the evidence, it is clear that someone at the Warren County Jail thought his condition was serious enough to transport him to a hospital

emergency room for treatment. While that treatment was minimal, the treating physician found some evidence of trauma, in the form of contusions to Hubbard's back and shoulder.

In determining whether the Defendants are entitled to qualified immunity on an excessive force claim, this threshold question must be resolved: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, as Hubbard alleges, he was handcuffed and immobilized on the ground at the time that he was struck and kicked by one or more officers, then he has alleged the violation of a constitutional right sufficient to overcome the Defendants' assertion of qualified immunity. With regard to whether Hubbard has sufficiently alleged an excessive force claim so as to defeat summary judgment, the court must determine whether Hubbard has alleged "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996).

At issue here is whether Hubbard has sufficiently established that he suffered some injury. The Fifth Circuit has held that the level of injury required to prevail on an excessive force claim "depends on the context in which the injury occurs." *Ikerd*, 101 F.3d at 434. Thus, while a fair amount of force may be tolerated in the context of arresting a dangerous suspect who is attempting to flee, "[I]n the context of custodial interrogation, the use of nearly any amount of force may result in a constitutional violation . . . ." *Id*. Thus, where a plaintiff who was handcuffed claimed that he was "roughed up" by officers during his arrest, suffering "acute cervical strain, abrasions to his wrists and lower arms, a contusion on his head, and bruises on his back, sides, and his thigh," the court held that he had alleged sufficient injuries to defeat a motion for summary judgment. *Namer*

*v. Gentrey*, No. 00-31180, 2001 WL 1013077 at *2, (5th Cir. Aug. 2, 2001).

In this case, the undersigned is of the opinion that the question is close. Clearly, the hospital records refute Hubbard's claim of a severe, sustained beating. However, because the court is constrained at this point to accept the Plaintiff's version of the events of his arrest as true, it must be assumed that whatever altercation occurred was between a single suspect already in custody and in restraints and a group of officers. In that context, the undersigned cannot find that there was insufficient injury to state a claim. Therefore, it is the recommendation of the undersigned that the Motion for Summary Judgment be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 16th day of January, 2007.

                                                             S/James C. Sumner
                                          UNITED STATES MAGISTRATE JUDGE